UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**SAXON GLASS TECHNOLOGIES, INC.**,

                **Plaintiff**,

v.                                                                     15-CV-581W(Sr)

**APPLE INC.**,

                **Defendant**.

_____

## DECISION AND ORDER

This case was referred to the undersigned by the Hon. Elizabeth A. Wolford, in accordance with 28 U.S.C. § 636(b)(1)(A), for all pretrial matters. Dkt. #24.

Saxon Glass Technologies, Inc. ("Saxon"), develops and produces chemically strengthened glass products, including products with registered trademarks IONEX and ION-KLAD, as well as an unregistered product, ION-ARMOR. Dkt. #1, ¶ 3.

On June 29, 2015, Saxon commenced this action against Apple Inc. ("Apple"), alleging that Apple's description of the chemically strengthened glass used on the face of its Apple Sport Watch as ION-X: (1) violates § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (trademark infringement and unfair competition); (2) violates § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) (dilution); (3) constitutes trademark infringement pursuant to New York statute and common law; (4) dilutes Saxon's mark in violation of New York statute and common law; and (5) constitutes unfair competition in violation of New York statute and common law. Dkt. #1.

On November 10, 2015, Saxon filed a complaint with the United States International Trade Commission ("ITC"), requesting an investigation into Apple's use of the term ION-X in connection with its watches. Dkt. #21.

On December 2, 2015, Saxon served its first request for documents and first set of interrogatories. Dkt. #33-4 & Dkt. #33-5. Apple responded to Saxon's first set of interrogatories and first request for documents on January 4, 2016. Dkt. #33-6 & Dkt. #33-7.

On January 26, 2016, in accordance with 28 U.S.C. § 1659(a), this action was stayed pending resolution of the ITC investigation. The stay was lifted on September 13, 2016. Dkt. #24.

By Stipulation and Order entered October 24, 2016, the second cause of action alleging violations of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) (dilution), was dismissed with prejudice. Dkt. #28.

On October 31, 2016, Saxon served Apple with updated interrogatories. Dkt. #33-9.

On November 2, 2016, Saxon served Apple with a second request for production of documents. Dkt. #33-10.

Currently before the Court is Saxon's motion and supplemental motion to compel Apple to respond to the updated interrogatories and second request for production of documents relating to Saxon's claims of dilution by tarnishment under New York law. Dkt. #33 & Dkt. #43. In support of its motion, Saxon argues that the ITC investigation was limited to trademark infringement with respect to the IONEX mark and did not raise claims regarding tarnishment under New York statute or common law. Dkt. #33-2, pp.2-3 & 11. With respect to this claim, Saxon argues that its chemically strengthened glass, which has propelled a striking rise in the popularity of the EpiPen, sets a "very high bar in terms of glass quality and low breakage rates" while the "breakage of glass used in covers of Apple devices is a well-known problematic defect of Apple products in the minds of consumers." Dkt. #33-2, p.11. Saxon argues that "the quality of Apple's ION-X glass, its engineering specifications affecting glass quality and breakage rates, the public perception of glass quality and breakage rates associated with Apple's ION-X glass, and how Apple manages this public perception of ION-X glass quality and breakage rates are all fair and reasonable lines of inquiry for Saxon's discovery requests." Dkt. #33-2, p.11.

Apple responds that Saxon seeks information which has already been provided during discovery in the ITC Investigation and seeks irrelevant, yet highly confidential technical specifications, manufacturing processes and test results regarding the ion exchange strengthened glass used in some Apple watches. Dkt. #35. Specifically, Apple argues that technical specifications and manufacturing processes are irrelevant to Saxon's dilution by tarnishment claim, which focuses on consumers'

perceptions. Dkt. #35, p.8. Apple argues that it has already provided discovery regarding consumer perception of the quality of the Apple Watch. Dkt. #35, p.8.

Saxon replies that it has taken great care to avoid discovery requests which duplicate discovery obtained in the ITC Investigation but emphasizes that there are additional issues in this case, *to wit,* the state law dilution by tarnishment claim. Dkt. #38, p.1. Saxon argues that the discovery requested in this motion to compel is relevant because breakage and scratch rates are key factors by which purchaser's gauge the quality of chemically strengthened glass. Dkt. #38, pp.2-3.

In a supplemental motion, Saxon clarifies that it seeks to "compel Apple to provide much needed discovery responses about the technical specifications of Apple's ION-X glass relevant to glass qualities and glass breakage rates that are internally accepted by Apple for the chemically strengthened glass which Apple identifies as ION-X glass in its Apple Watch products," but "does not request the Court to compel Apple to produce any substantial new marketing information about its use of the ION-X mark other than information on how Apple manages public perception of glass breakage rates or any necessary updates to what marketing information has been previously provided by Apple." Dkt. #43, p.1.

Fed. R. Civ. P. 26(b)(1) provides, in relevant part:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the

> importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

The Advisory Committee Notes to the 2015 Amendment clarifies that the rule was amended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse."

New York General Business Law § 360-l provides: "Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." To establish such a claim, plaintiff must demonstrate ownership of a distinctive mark and a likelihood of dilution, which can be demonstrated by a showing of either blurring or tarnishment. *Hormel Foods Corp. v. Jim Henson Productions, Inc.*, 73 F.3d 497, 506 (2d Cir. 1996). "A trademark may be tarnished when it is 'linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context,' with the result that 'the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods.'" *Id.* at 507, *quoting Deere & Co. v. MTD Products, Inc.*, 41 F.3d 39, 43 (2d Cir. 1994). Thus, New York's concept of dilution focuses on the risk "that consumers will come to attribute unfavorable characteristics to a mark and ultimately associate the mark with inferior goods and services." *Deere*, 41 F.3d at 45.

In the instant case, consumers will perceive the quality or inferiority of the glass utilized on the Apple Watch by comparing it to similar products and to Apple's communicated expectations for the product.  As a result, the Court does not believe that Apple's internal and confidential specifications and processes are relevant to Saxon's ability to demonstrate consumer perception of the glass utilized on the Apple Watch as shoddy.  Accordingly, Saxon's motion to compel is denied with respect to its request for production of documents numbered 3 (engineering specifications); 4 (quality assurance testing); 8 (methodology, process & quality assurance testing); 9 (manufacturing process) & 10 (quality assurance testing), and with respect to Interrogatory #1 in so far as it seeks identification of individuals responsible for engineering specifications and quality assurance testing; Interrogatory #6 seeking identification of individuals knowledgeable about the chemical strengthening process, quality assurance testing or assembly of the ION-X glass into the Apple Sport Watch; and Interrogatory #13 in so far as it seeks identification of individuals knowledgeable about the surface compression, compressive depth, compressive strength features, scratch resistence and fracture resistance of the Apple Sport Watch.

To the extent that such documents have not already been provided in the course of the ITC Investigation, Saxon's motion to compel production of documents referencing the ION-X glass in the Apple Sport Watch is granted with respect to request number 6 (published media), and request number 7 (promotional marketing), as well as with respect to Interrogatory #1 in so far as it seeks identification of individuals responsible for customer service issues, media relations or marketing efforts and

Interrogatory #13 in so far as it seeks identification of individuals knowledgeable about consumer impressions and comparison studies of the ION-X glass used in the Apple Sport Watch.

Saxon's motion to compel production of documents referencing customer complaints of defective ION-X glass in Apple Sport Watches is moot in light of Apple's production of such documents. Dkt. #44, p.2.

**SO ORDERED.**

DATED:    Buffalo, New York
             February 1, 2018

                                        *s/ H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.**
                                          **United States Magistrate Judge**